UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAMIEN OWES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:05-0725 |
| ) | Judge Campbell |
| ROBERT WALLER, WARDEN, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM

I. INTRODUCTION
AND
BACKGROUND

The petitioner, Damien Owes, is a prisoner in the Lois M. DeBerry Special Needs Facility ("DeBerry") in Nashville, Tennessee. Owes brings this *pro se* action under 28 U.S.C. § 2254 challenging the constitutionality of his conviction and sentence. Owes names Robert Waller, Warden at DeBerry, as the respondent.

The Grand Jury of Davidson County indicted Owes and two co-defendants on one count of especially aggravated robbery, five counts of especially aggravated kidnapping, one count of aggravated burglary, and one count of aggravated assault, all charges stemming from events that occurred in the early morning hours of November 12, 1998. (Add. 1, pp. 2-9)[1,2] Owes was tried with the other co-defendants (Add. 2, Vols. 1-5) and convicted on one count of especially aggravated robbery, five counts of especially aggravated kidnapping, and one count of aggravated burglary (Add. 1, pp. 43-49). Judgment was entered against Owes on December 17, 1999 and he

---

[1]  Each addendum ("Add.") referred to herein was filed as an attachment to Docket Entry No. 13.

[2]  The page numbers from the trial and post-conviction technical records (Add. 1 and 9) to which reference is made are the Bates Stamp numbers at the bottom of the pages cited. In the other addenda, the page numbers referred to are the actual page numbers of the document to which reference is made.

1

was sentenced to thirty (30) years in the Tennessee Department of Correction. (Add. 1, pp. 43-49)

Owes filed a notice of appeal on May 22, 2000 (Add. 1, p. 66) raising a single issue – "[w]as the evidence sufficient to lead any rational trier of fact to conclude beyond a reasonable doubt that [Owes] was guilty?" (Add. 3, pp. iv, 1-7). The Tennessee Court of Criminal Appeals ("the Court of Criminal Appeals") affirmed the judgment of the trial court on June 1, 2001 (Add. 5), following which Owes' application for permission to appeal in the Tennessee Supreme Court (Add. 6) was denied on July 30, 2001 (Add. 8). Owes did not file a petition for a writ of *certiorari* in the United States Supreme Court ("the Supreme Court").

Owes filed a petition for state post-conviction relief on April 18, 2002 (Add. 9, pp. 1-5) and an amended petition on August 12, 2002 (Add. 9, pp. 8-18). An evidentiary hearing was held on October 3, 2002 (Add. 10), following which his petition was denied on October 5, 2002 (Add. 9, pp. 20-24). On appeal from the judgment of the post-conviction court, Owes raised the following two issues: was "[t]rial counsel . . . ineffective when he failed to investigate the case prior to trial," and was "[t]rial counsel . . . ineffective when he failed to convey a plea bargain offer in a timely fashion?" (Add. 11, pp. 2, 5-8) The Court of Criminal Appeals affirmed the judgment of the post-conviction court on May 3, 2004 (Add. 13), following which the Tennessee Supreme Court denied Owes' application for permission to appeal (Add. 14) on October 11, 2004 (Add. 15). Again, Owes did not file a petition for a writ of *certiorari* in the Supreme Court.

Owes filed a petition and an amended petition for *habeas corpus* relief under 28 U.S.C. § 2254 on September 19, 2005. (DE # 1, 6) On December 5, 2005, the respondent filed an Answer and the record of proceedings in state court. (DE # 12-13) On December 21, 2005, Owes filed a response to the respondent's Answer. (DE # 14)

2

## II. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977)). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that

3

presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A. Timeliness

As an initial matter, the respondent argues that the instant action is untimely. (DE # 12, p.8) The respondent contends that the Sixth Circuit's decision in *Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003) was wrongly decided and that it is in conflict with the Supreme Court's opinion in *Duncan v. Walker*, 533 U.S. 167 (2001). Overruling its earlier opinion in *Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000), the Sixth Circuit's decision in *Abela* provides that the AEDPA's one-year limitations period is tolled at the conclusion of state post-conviction proceedings for the ninety (90) days during which a petitioner can file a petition for a writ of *certiorari* in the Supreme Court, whether a petition is filed or not. Notwithstanding the respondent's disagreement with the Sixth Circuit's opinion in *Abela*, this Court is bound by that decision. In reviewing the question of timeliness under the AEDPA, and taking *Abela* into account, this action was brought within the AEDPA's one-year limitations period. Accordingly, the respondent's argument to the contrary is without merit.

### B. Procedural Default

The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that *habeas* a petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed unexhausted and ordinarily are dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where a claim was presented to the state courts, but the courts, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

"These rules apply both to entirely new legal claims and to new factual bases for relief; for a claim to be considered exhausted, the petitioner must have 'fairly presented' to the state courts the 'substance of his federal habeas corpus claim.'" *Alley*, 307 F.3d at 386 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982))(internal citations omitted); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal courts."). "Although 'bits of evidence' which were not before the state courts will not render a claim unexhausted, where a federal *habeas* petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given the opportunity to consider the evidence." *Sampson v. Love*, 782 F.2d 53, 57 (6th Cir. 1986)(quoting *Jones v. Hess*, 681 F.2d 688, 691 (10th Cir. 1982)(internal citations omitted)).

A review of the record shows that Owes has raised the following grounds for relief in these proceedings:

    1)    he was illegally seized and arrested (DE # 1, pp. 5, 7-10; DE # 2, pp. 2, 3-9);

    2)    the indictments against him were constitutionally defective (DE # 1, pp. 5, 10-14; DE # 2, pp. 2, 9-17);

    3)    the reasonable doubt jury instruction was constitutionally defective (DE # 1, pp. 6, 14-17; DE

5

# 2, pp. 2, 17-24; DE # 6, p. 7);[3]

4) defense counsel was ineffective for not challenging the reasonable doubt jury instruction (DE # 1, p. 17; DE # 2, pp. 23-24);

5) the evidence was insufficient to support his conviction (DE # 1, pp. 6, 35-54);

6) defense counsel was ineffective for not advising him of the punishment that he could be subjected to if convicted (DE # 1, p. 21; DE # 6, p. 3);

7) defense counsel was ineffective for not advising him of a plea offer made by the State until the day of trial (DE # 1, pp. 18-20; DE # 6, pp. 2-3);

8) defense counsel was ineffective for not impeaching Mario Mitchell, one of the victims, about his prior inconsistent statements (DE # 1, pp. 21-23; DE # 6, pp. 2-4);

9) defense counsel was ineffective for not calling witnesses who could have cast reasonable doubt on the State's case (DE # 1, pp. 23-27; DE # 6, pp. 2-4);

10) defense counsel was ineffective for not properly investigating the facts of the case or interviewing witnesses (DE # 1, pp. 20-21; DE # 6, pp. 2, 4);

11) defense counsel was ineffective because he did not prepare for trial (DE # 6, p. 4);

12) post-conviction counsel was ineffective in preparing for the post-conviction evidentiary hearing (DE # 1, pp. 28-33; DE # 6, pp. 2, 5, 9);

13) counsel on direct appeal was ineffective generally (DE # 6, pp. 2, 5-6);

14) appellate counsel on post-conviction was ineffective

---

[3] The pages in Docket Entry No. 6 are unnumbered. The page numbers in Docket Entry No. 6 referred to herein are the page numbers assigned by CM/ECF to the electronically filed document.

>    for failing to consult or discuss issues raised during the post-conviction proceedings (DE # 6, pp. 2, 5, 6);
>
> 15) appellate counsel on direct appeal and post-conviction were ineffective for failing to investigate/research the issues adequately (DE # 6, pp. 2, 10);
>
> 16) appellate counsel on post-conviction was ineffective for not raising issues presented in the instant petition on appeal (DE #1, pp. 33-35); and
>
> 17) the trial court erred by "constructively amend[ing] the indictment by charging the jury on elements of the offense different from that which the petitioner was indicted" (DE # 6, p. 7).

As previously established, *supra* at p. 2, the only claims that the Owes raised in state court were sufficiency of the evidence, ineffective assistance of counsel for failure to investigate, and ineffective assistance of counsel for failure to inform Owes of a plea offer. Because the other claims identified above were not raised in state court prior to being raised in the instant proceedings, they are unexhausted. The question becomes whether they are procedurally defaulted as well.

Tennessee's post-conviction statute, Tenn. Code Ann. § 40-30-102 (1995), provides, *inter alia*:

> Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise.

*Id*. at § (a). The Tennessee post-conviction statute goes on to state that:

> This part contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed. A petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in § 40-30-117.

*Id.* at § (c). The limited circumstances in Tenn. Code Ann. § 40-30-117 (1995) are that:

(1) "The claim in the motion is based on a final ruling of an appellate court establishing a constitutional claim that was not recognized as existing at the time of trial. . . ."

(2) "The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent . . . ."

(3) "The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid . . . ."

(4) "It appears the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced."

*Id.* at §§ (a)(1)-(a)(4).

Owes's conviction became final on December 30, 2001 when the ninety-day period in which he could have filed a petition for a writ of *certiorari* on direct review lapsed. Because more than one year has passed since the judgment in Owes's case became final, he is time-barred under Tenn. Code Ann. § 40-30-102(a) from filing a petition for post-conviction relief. Moreover, because Owes already has filed one post-conviction petition, he may not file another. A careful review of the unexhausted claims before the court also shows that none fall within the scope of §§ 40-30-117(a)(1)-(a)(4). Therefore, the "motion-to-reopen" provision of Tenn. Code Ann. § 40-30-102(c)

8

is inapplicable. For these reasons, Owes' unexhausted claims are procedurally defaulted for purposes of State review.

If a claim is procedurally defaulted for purposes of State review, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" and "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id*., and requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Owes does not address "cause and prejudice" as a separate topic in any of his pleadings. It can be liberally construed from the petition, however, that he attributes "cause" for the failure to

9

raise the claims at issue to ineffective assistance of counsel. (DE # 1, pp. 33-35; DE # 6, pp. 2, 5-6,10)

Ineffective assistance of counsel, as defined by *Strickland v. Washington*, *infra* at pp. 12-13, may establish "cause" to excuse procedural default. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 488. However, "[t]o constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665 (2005). In *Murray*, the Supreme Court explained that the doctrine of exhaustion "requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." 477 U.S. at 488–89; *see also Jones v. Toombs*, 125 F.3d 945, 947 (6th Cir. 1997).

The record shows that Owes has not raised an ineffective assistance claim in any state court alleging that appellate counsel on direct appeal was ineffective for not raising those claims at issue that should have been raised on direct appeal. Therefore, Owes may not assert ineffective assistance of counsel as "cause" to excuse the default of those claims that could have been raised on direct appeal but were not. As to his claim that post-conviction appellate counsel was ineffective for not raising all meritorious claims, the Supreme Court has held that, because there is no constitutional right to counsel in state post-conviction proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551 (1987), there can be no constitutionally ineffective assistance of counsel in such proceedings, *see Coleman*, 501 U.S. at, 742-53. More particularly, a claim of ineffective assistance in state post-conviction proceedings cannot establish "cause" because there is no constitutional right to counsel in post-conviction proceedings in the first place. *Ritchie v. Eberhart*, 11 F.3d 587, 590 (6th Cir. 1993); *see also Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)(a petitioner cannot use a claim of ineffective assistance to excuse his failure to raise all of his claim in a petition for post-conviction

10

relief).

Having failed to establish "cause," Owes cannot meet both halves of the two-part "cause-and-prejudice" test. Moreover, Owes does not argue that he is innocent of the offenses of which he was convicted, nor can such an inference be liberally construed from the pleadings.

For the reasons explained above, Owes has not established grounds to excuse his procedural default. Accordingly, the clams at issue are procedurally defaulted for purposes of federal *habeas corpus* review.

### C. Owes' Exhausted Grounds For Relief

#### 1. Sufficiency of the Evidence

Owes alleges that the evidence was insufficient to establish that he committed the offenses for which he was convicted. In federal *habeas corpus*, evidence is deemed sufficient to support a verdict if, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *Zuern v. Tate,* 336 F.3d 478, 482 (6th Cir. 2003).

In its review, the Court of Criminal Appeals correctly identified *Jackson* as controlling in challenges to evidentiary sufficiency. (Add. 5, p. 9) After identifying *Jackson* as controlling, the Court of Criminal Appeals analyzed the evidence against Owes, including that: 1) one of the victims recognized Owes by his voice and clothing; 2) one of the victims saw Owes' face when he took off his mask; and 3) one of the victims saw the number "12" inscribed in Owes' gold front teeth. (Add. 5, p. 10) In reviewing Owes' sufficiency of the evidence claim, the Court of Criminal Appeals also took into consideration inconsistencies in the evidence, determining that "although conflicting and inconsistent testimony was presented at trial, these inconsistencies were not so improbable or unsatisfactory as to create a reasonable doubt of the defendants' guilt." (Add. 5, p. 11) Following

11

its analysis, the Court of Criminal Appeals concluded that "the evidence was sufficient to support the defendants' convictions." (Add. 5, p. 11)

As previously established, *supra* at pp. 3-4, where state courts make factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Owes has failed to establish that the Court of Criminal Appeals' factual determinations regarding this claim are not entitled to the presumption of correctness. Moreover, a review of the record shows that the Court of Criminal Appeals' determination was neither contrary to nor an unreasonable application of existing federal law as established by the Supreme Court's precedent in *Jackson*. Accordingly, this claim is without merit.

### 2. Ineffective Assistance for Failure to Investigate Prior to Trial

To prevail on a claim of ineffective assistance of counsel, a *habeas* petitioner must show both deficient performance and prejudice. *See Bell*, 535 U.S. at 694-95. Trial counsels' performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Strickland*, 466 U.S. at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977

12

F.2d 222, 229 (6th Cir. 1992)(*en banc*), *cert. denied*, 508 U.S. 975 (1993)).

The record shows that Owes raised this claim on appeal from the judgment of the post-conviction court solely in terms of defense counsel's failure to interview a potential alibi witness named Theresa Crenshaw. (Add. 11, pp. 7-8) In the instant proceedings, Owes seeks to expand the scope of this claim by asserting, *inter alia*, that counsel "failed to proper[ly] investigate the facts of the case or interview witnesses Teresa Crenshaw and April Faust . . . ." (Docket Entry No. 1, pp. 20-21) For reasons previously explained, *supra* at pp. 4-11, the facets of this ineffective assistance claim that differ from the claim raised on appeal from the judgment of the post-conviction court are procedurally defaulted for purposes of federal *habeas corpus* review. Thus, the only part of this claim that is properly before the Court is Owes' allegation that defense counsel failed to interview Crenshaw.

On appeal from the judgment of the post-conviction court, the Court of Criminal Appeals properly identified *Strickland* as controlling in those instances where ineffective assistance of counsel is alleged. (Add. 13, p. 5) The Court of Criminal Appeals went on to note that Owes' claim failed "in the first instance, because the petitioner never offered the testimony of Ms. Crenshaw at the post-conviction hearing." (Add. 13, p. 5) The Court of Criminal Appeals further noted that, at the post-conviction evidentiary hearing ("evidentiary hearing"):

> trial counsel testified that the petitioner had given a statement to the police claiming that he had been at Crenshaw's apartment on November 12, 1998, from approximately 5:30 p.m. The break-in and robbery occurred during the early morning hours of November 12, between 2:00 and 4:00 a.m. The differing time frames would not have supplied the petitioner with an alibi for the offenses; therefore, no prejudice has been established.

(Add. 13, p. 6)

The record shows that Teresa Crenshaw was neither present nor testified at the evidentiary

13

hearing, although it appears from the record that Owes wanted her there. (Add. 10, pp. 2-6) On cross-examination, Owes testified that, had Crenshaw been called as a witness, she would have testified that he "was at her house on November the twelfth, all day, asleep." (Add. 10, p. 33)

David Byrne, Owes' attorney at trial, testified that Owes did try to have him subpoena a woman named Lakota Summers whom Owes claimed would have provided him with an alibi. (Add. 10, pp. 42-44) Byrne entered a handwritten note from Owes into evidence in which Owes told Byrne that Summers would "verify" that he was "at her home . . . on the dates that [one of the victims] said I . . . tried to harm him." (Add. 10, Ex. 1) Byrne testified that Owes did not ask him to call Crenshaw as a witness and that he did not even know who she was. (Add. 10, p. 45)

On cross-examination, Byrne was asked if he recognized a police report in which Crenshaw's name appeared. (Add. 10, pp. 56-57 and Ex. 3) Byrne ultimately recalled that Owes had provided him the copy of the police report, but pointed out that the report pertained to an incident on November 13, 1998 and not to the events for which Owes was tried. (Add. 10, p. 57) In the report of the other incident, Owes told the police that "he ha[d] been at [Crenshaw's] apartment since 11-12-98 at approx. 1730 hrs." (Add. 10, Ex. 3) In clarifying the matter for the record, the post-conviction judge made the following observation:

> All right. And, I mean, the allegation here, about you not calling Ms. Crenshaw, this report says that Mr. Owes gave a statement to the police about the November thirteenth attempted murder allegations.
>
> And it says, "He has been dating Ms. Crenshaw for approximately one year. She lives at such-and-such address, Cumberland View Apartments. He said he has been at the apartment since November twelfth, 'ninety-eight, at approximately seventeen thirty,' which would be five-thirty p.m. That's what this report says.
>
> So, my question is, if that report – and Mr. Owes is the one's provided it [sic] – if that report is some basis of making complaints against you, my notes reflect that the Mario Mitchell incident was between two and four a.m., on November twelfth.

14

> So, he's saying, from his own statement, that he wasn't there with
> Ms. Crenshaw until five-thirty p.m.
>
> . . .
>
> So, from this report – from this report – and we can hear from Ms.
> Crenshaw, if they'd wanna call her up here – but, from this report and
> statement he gave to the police, he didn't have an alibi.

(Add. 10, pp. 67)("[sic]" in the original) In his Order denying Owes' petition for post-conviction relief, the post-conviction judge wrote that "[t]he potential alibi witnesses would not have aided the defendant based on the police report introduced by the petitioner." (Add. 9, p. 22) In other words, even if Byrne were negligent because he did not interview Crenshaw, Owes was not prejudiced by his failure to do so.

Owes has failed to establish that the Court of Criminal Appeals' factual determinations regarding this claim are not entitled to the presumption of correctness. Moreover, the Court of Criminal Appeals' determination that Owes was not prejudiced because defense counsel did not interview Crenshaw is neither contrary to nor an unreasonable application of existing federal law as established by Supreme Court precedent in *Strickland*. Accordingly, this claim is without merit.

### 3. Defense counsel's Failure to Advise Owes of a Plea Offer Made by the State

Owes asserts that defense counsel did not inform him of a plea offer made by the State until the day of trial. (DE # 1, pp. 18-20) On appeal from the judgment of the post-conviction court, the Court of Criminal Appeals determined that "[c]redibility issues fall within the sound discretion of the lower court . . . ." (Add. 13, p. 6) Having determined that witness credibility issues were best left to the trial court, the Court of Criminal Appeals did not address the issue further. In other words, the Court of Criminal Appeals did not address Owes' ineffective assistance claim.

The respondent argues that the "Court of Criminal Appeals [did] rule[] on this claim . . . ." and that it determined "that there was nothing in the record to overcome the presumption accorded

15

[the post-conviction court's] findings." (DE # 12, pp. 11-12) The respondent argues further that "[t]he decision of the state courts [wa]s neither contrary to, nor an unreasonable application of, existing Supreme Court precedent." (DE # 12, p. 12)

The record does not support the respondent's argument. Apart from determining that witness credibility issues are matters best left to the sound discretion of the trial court, the Court of Criminal Appeals made no determinations of fact or law pertaining to Owes' ineffective assistance claim. Consequently, there are no factual determinations that are entitled to the presumption of correctness or any application of the law that is consistent with existing Supreme Court precedent. Because the Court of Criminal Appeals did not address this claim on the merits, the Court will determine from the record whether an evidentiary hearing on this issue is warranted. Rule 8(a), Rules – Section 2254 Cases.

In his petition before this Court, Owes asserts that Byrne did not advise of him of the plea offer until the day of trial and that he would have accepted the offer had he known about it. (DE # 1, p. 19-20) Owes provides no factual allegations in his pleadings to support these two claims. Specifically, Owes does not assert that Byrne knew about the plea offer earlier, that he told Byrne that he wanted to accept the offer after learning about it, that Byrne told him that it was too late to accept the offer, or any other factual allegations that would support the conclusion that Byrne's representation was deficient with respect to this issue.

The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts to support conclusory allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)(citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)). Moreover, the Sixth Circuit has held that conclusory allegations, without supporting factual allegations or evidentiary support, do not provide a basis for *habeas corpus* relief. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir.

16

2001)(citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir.1991)(bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in federal *habeas corpus* proceedings). Standing alone, the ground for relief as set forth in the pleadings before this Court fails to state a claim on which relief may be granted.

Turning to the proceedings in state court, the record shows that Owes testified at the evidentiary hearing that Byrne did not tell him of the plea offer until the day before trial, that Byrne turned down the plea offer without his consent, and that he never agreed that Byrne should set the case for trial. (Add. 10, pp. 11-15) Owes testified further that he would have taken the plea offer if he had known of it. (Add. 10, p. 13) Finally, Owes testified that Byrne told him that it was too late to accept the plea offer because the case had been set for trial. (Add. 10, p. 13) Apart from his testimony, Owes offered no proof at the evidentiary hearing to support his allegations.

Contradicting Owes' testimony, Byrne testified at the evidentiary hearing that "[e]ach time we appeared on a discussion date, th[e] [plea] offer was conveyed to [Owes]; and he flatly refused each time." (Add. 10, p. 40) Byrne maintained that Owes declined the plea offer because Owes was convinced that none of the victims could identify him. (Add. 10, p. 40) Byrne further testified that it was his belief that Owes' decision not to accept the plea offer was influenced by Leonard Baugh, one of Owes' co-defendants, whom Byrne testified he saw eavesdropping on his conversations with Owes. (Add. 10, pp. 46-47) Apart from his testimony, Byrne offered no proof that he advised Owes of the plea offer prior to the date alleged.

This issue boils down to Owes' word against Byrne's. Noting that the burden of persuasion is on Owes, there are numerous inconsistencies in the record that call Owes' credibility into question. For example, Owes testified at the evidentiary hearing that Byrne came to see him only twice prior to trial. (Add. pp. 10-11) Byrne testified, on the other hand, that his records showed he

17

appeared in court six times with Owes and that he saw Owes on "at least . . . eight other visits to CCA, to visit with him personally . . . [to] prepare this case . . . ."[4] (Add. 10, p. 39) The record supports the conclusion that Owes misrepresented the effort that Byrne put into his case.

On another occasion, Owes testified at the evidentiary hearing that Byrne adamantly "refused" to cross-examine any of the witnesses at trial. (Add. 10, p. 19) However, the record shows that Byrne cross-examined ten of the eleven witnesses, and that he questioned three of them on recross examination. The only witness whom Byrne did not cross-examine was Hazel Jackson, the mother of one of Owes' co-defendants, who merely identified Owes as one of her son's friends. (Add. 2, vol. 4, pp. 297-298) The record shows that this allegation was false.

Owes was particularly emphatic in his allegation that Byrne "failed to impeach the blatant perjury of Mario Mitchell," one of the victims. (Add. 10, p. 20) The record shows just the opposite. Byrne did, in fact, cross-examine Mitchell and the focus of his questioning was to impeach his testimony. (Add. 2, Vol. 2, pp. 191-195) Byrne also questioned Mitchell on recross examination in a further attempt to impeach his testimony. (Add. 2, Vol. 3, pp. 232-233) Again, the record shows that this allegation was untrue.

Then there is the question of the alibi witnesses Teresa Crenshaw and Lakota Summers previously discussed, *supra* at pp. 13-15. Owes told Byrne – at different times prior to trial – that each women was an alibi witness who would testify that he was with them at their home at the time of the crimes for which he was tried. The record shows that Crenshaw and Summers had different addresses. (Add. Ex. 1, 3) Owes could not have been both places at the same time.

Inconsistencies of the nature described above have carried over into these proceedings as well. Specifically, at the evidentiary hearing, Owes testified that Byrne first told him of the plea

---

[4] The records to which Byrne referred at the evidentiary hearing were not introduced into evidence.

18

offer the day prior to trial. (Add. 10, pp. 11-12, 15) Owes' testimony to that effect was unambiguous. However, in these proceedings, Owes now alleges that Byrne did not advise him of the plea offer until the day of trial. (DE # 1, pp. 18-20) Both allegations cannot be true.

The Court offers no opinion regarding the reasons that may lie behind the inconsistencies described above. The Court notes only that the inconsistencies exist and, as such, Owes' credibility is suspect – including his credibility with respect to the representations that he has made before this Court on this issue.

After thoroughly reviewing the record, including the entire record of the proceedings in state court, the Court finds that Owes has failed to meet his burden of persuasion with respect to his claim that Byrne's did not tell him of the plea offer until the day of the trial. Concomitantly, Owes has failed to establish that Byrne's representation was deficient in that regard. Because Owes cannot satisfy both halves of the two-part test required to establish ineffective assistance of counsel under *Strickland*, this claim is without merit.

### III. CONCLUSION

Owes has failed to establish that he is entitled to federal *habeas corpus* relief on any of the grounds that he has presented to this Court. Therefore, his petition will be denied and this action dismissed.

_Todd Campbell_
Todd Campbell
United States District Judge

19